**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| DONALDSONVILLE GLASS AND BODY WORKS, INC. | CIVIL ACTION |
| VERSUS | 22-817-SDD-RLB |
| CITY OF GONZALES, ET AL. | |

consolidated with

| | |
|---|---|
| SOUTHERN TOWING & TRANSPORT, LLC, ET AL | CIVIL ACTION |
| VERSUS | 23-473-SDD-RLB |
| CITY OF GONZALES | |

<u>**RULING**</u>

This matter is before the Court on the Motion for Attorney's Fees by Plaintiff Gonzales Towing and Repair, Inc. ("Plaintiff").[1] Defendant, City of Gonzales ("Defendant" or the "City") opposes the Motion,[2] and Plaintiff filed a Reply.[3] For the following reasons, Plaintiff's Motion will be granted, as modified.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of the claims brought by Plaintiffs, Southern Towing & Transport, LLC ("Southern Towing") and Gonzales Towing and Repair, Inc. (Gonzales Towing") that the City of Gonzales violated their First Amendment rights of political

---

[1] Rec. Doc. 94.
[2] Rec. Doc. 95.
[3] Rec. Doc. 98.

speech and association and created an illegal monopoly by adopting a five-company towing rotation list for the City.[4]  Plaintiffs also sought declaratory and injunctive relief. Plaintiffs claimed they were not selected to the Defendant's towing rotation list because they did not support City of Gonzales Chief of Police Sherman Jackson's ("Chief Jackson") latest re-election bid. Defendant filed a Motion for Summary Judgment,[5] which the Court granted in part and denied in part.[6] The Court dismissed Plaintiffs' antitrust claims with prejudice but denied summary judgment as to their First Amendment and declaratory/injunctive claims.[7]

The First Amendment claim proceeded to a jury trial. Initially, both Plaintiffs sought compensatory damages for income they claimed they lost by their exclusion from the City's list. However, Plaintiffs attempted to establish lost profits damages through only their own testimony without any supporting documentary evidence.[8] The Court evaluated the evidence that was required under Louisiana law to establish damages for lost profits and analyzed the applicable jurisprudence.  The Court concluded that, under Louisiana law, "the uncorroborated testimony by a plaintiff alone is insufficient to provide economic loss damages to a degree of reasonable certainty."[9]  The Court made clear that Plaintiffs were permitted to present evidence of lost profits such as tax returns, invoices, or any other measure of corroborating evidence.  Because Plaintiffs lacked this documentation,

---

[4] Rec. Doc. 18, ¶¶ 6, 13, 15, 16, 19, 22.
[5] Rec. Doc. 39.
[6] Rec. Doc. 54.
[7] *Id.*
[8] Notably, the owners of both Plaintiff companies testified that they mitigated damages by seeking business from other places, and their tax returns would not show any lost revenue for the year. *See* Rec. Docs. 58-5, p. 49; 58-6, pp. 114-15.
[9] Rec. Doc. 77, p. 7.

they could not present evidence of lost profits based solely on the speculative testimony of the Plaintiffs' owners.[10]  Thus, only nominal damages were available to recover.

The jury returned a verdict in favor of Gonzales Towing and awarded it $2,500.00 in nominal damages; however, the jury returned a verdict against Southern Towing, finding that its exclusion from the towing rotation list was not motivated by any political speech or conduct.[11]  After the trial, the parties briefed Plaintiffs' request for declaratory and injunctive relief, which the Court denied.[12]  Gonzales Towing now seeks attorneys' fees based on its "prevailing party" status under 28 U.S.C. § 1988, which Defendant opposes.

## II.    PARTIES' ARGUMENTS

Plaintiff now moves for costs and attorneys' fees based on its "prevailing party" status under 42 U.S.C. §1988(b) after having succeeded on its First Amendment retaliation claim under 42 U.S.C. §1983. Plaintiff emphasizes the value of vindicating constitutional rights, arguing that it can never be *de minimus*. It also contends the verdict serves as great motivation for Defendant to change its retaliatory practices. Plaintiff then discusses the evidence provided to support the rate and billing hours sought in this matter. Plaintiff ultimately requests $143,705.00 in attorneys' fees, acknowledging that "a reduction by one-half may be appropriate,"[13] and $6,784.91 in costs.[14]

Defendant opposes Plaintiff's motion.  While Defendant does not dispute Plaintiff's prevailing party status, it argues that the Supreme Court's decision in *Farrar v. Hobby*

---

[10] Rec. Doc. 80.
[11] Rec. Doc. 83.
[12] Rec. Doc. 91.
[13] $71,852.50.
[14] Rec. Doc. 94-2, pp. 8-9.

*Lobby*[15] is directly applicable to this case because Plaintiff sought compensatory damages but was only awarded nominal damages.  Thus, Defendant maintains Plaintiff is entitled to no fee; Defendant alternatively urges the Court to reduce any award to "a level that is reasonable and proportionate to the minimal success Plaintiff actually achieved."[16] Defendant also specifically attacks Plaintiff's evidence regarding local rate, billing hours, and costs.

Plaintiff responds by acknowledging some billing errors but largely defends the attorneys' fees and costs sought.

### III.    LAW AND ANALYSIS

42 U.S.C. § 1988 provides for attorneys' fees to prevailing parties in civil-rights cases: "In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...."[17] Defendant does not dispute that Plaintiff is a prevailing party on the First Amendment claim.

In *Farrar v. Hobby Lobby*, the Supreme Court held that even a plaintiff who recovers only nominal damages may still be a prevailing party under Section 1988.[18] Further, "a prevailing party should ordinarily recover attorney's fees unless special circumstances would render such an award unjust."[19] The special circumstances exception "is a narrow carve-out of the general rule that prevailing civil-rights plaintiffs should be awarded fees."[20] A defendant carries "the high burden of establishing the

---

[15] 506 U.S. 103 (1992).
[16] Rec. Doc. 95, p. 3.
[17] 42 U.S.C. § 1988(b).
[18] *Farrar,* 506 U.S. at 115.
[19] *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983).
[20] *Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014); *see also Espino v. Besteiro*, 708 F.2d 1002, 1005 (5th Cir. 1983) (describing the exception as "extremely limited").

application of the exception."[21]

Additionally, the Fifth Circuit has held that "[a] prevailing plaintiff's degree of success is not a special circumstance that justifies a complete denial of [ ] fees."[22] "Instead, the degree of success... is a factor—often an important one—to consider in assessing the reasonableness of the fee request."[23] "[I]f 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate'"—i.e., the lodestar—"may be an excessive amount."[24]

In *Farrar*, the Supreme Court affirmed the complete denial of a fee award to the prevailing plaintiffs, explaining that, "[i]n a civil rights suit for damages, ...the awarding of nominal damages [ ] highlights the plaintiff's failure to prove actual, compensable injury."[25] Hence, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all."[26] In the Fifth Circuit, "the *Farrar* circumstance of nominal but no compensatory damages only justifies a complete denial of fees when monetary relief is the primary objective of a lawsuit."[27] The Supreme Court instructs that, "[w]here recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as

---

[21] *See Pruett v. Harris Cty. Bail Bond Bd*., 499 F.3d 403, 417 (5th Cir. 2007) ("[D]efendants must make an 'extremely strong showing' of special circumstances to avoid paying attorneys' fees....").
[22] *Sanchez*, 774 F.3d at 881
[23] *Grisham v. City of Fort Worth, Tex*., 837 F.3d 564, 568 (5th Cir. 2016); *see also Sanchez*, 774 F.3d at 881 (discussing the distinction between the availability of a fee award and the reasonableness of a fee request).
[24] *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436).
[25] *Farrar*, 506 U.S. at 115.
[26] *Id*. (internal citation omitted).
[27] *Grisham*, 837 F.3d at 569; *see also Riley v. City of Jackson, Miss*., 99 F.3d 757, 759–60 (5th Cir. 1996) (understanding *Farrar* as "illustrative of cases where the plaintiff sought only money damages and was essentially unsuccessful since he did not achieve in any way the ultimate goal of the litigation").

compared to the amount sought."[28] This comparison "promotes the court's 'central' responsibility 'to make the assessment of what is a reasonable fee under the circumstances of the case.'"[29] When *Farrar* controls, if the court has "considered the amount and nature of damages awarded, **the court may lawfully award low fees** ... without reciting the 12 factors bearing on reasonableness ... or multiplying 'the number of hours reasonably expended ... by a reasonable hourly rate.'"[30]

In *Shelton v. Louisiana State*, the Fifth Circuit explained that nominal damage awards may support the award of attorney's fees if the litigation achieved a compensable goal.[31] The *Shelton* court also held that the district court is in the best position to determine whether the lawsuit achieved a compensable public goal justifying a fee award.[32]

In determining whether a plaintiff achieved a compensable public goal, the Court considers whether the litigation served a public purpose as opposed to simply vindicating a plaintiff's individual rights.[33]  In other words, the public purpose prong of *Farrar* is not satisfied simply because a plaintiff establishes that his constitutional rights have been violated.[34] The Fifth Circuit set forth two instances where litigation can be determined as achieving a compensable goal. The first instance is when the case sets a new legal precedent.[35] This scenario was present in *Hopwood v. Texas* where, although the plaintiffs

---

[28] *Farrar*, 506 U.S. at 115. (citation omitted).
[29] *Id*. at 115 (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989)).
[30] *Id*. (citations omitted)(emphasis added).
[31] 519 F.3d 325, 329-30 (citing *Hopwood v. Texas*, 236 F.3d 256, 278 (5th Cir. 2000) (*Hopwood III*).
[32] *Id.* at 331.
[33]  *See Farrar*, 506 U.S. at 121–22, 113 S.Ct. 566 (O'Connor, J., concurring) (explaining that a plaintiff's "success might be considered material if it also accomplished some public goal other than occupying the time and energy of counsel, court, and client"); *cf. Carter v. Burch*, 34 F.3d 257, 266 (4th Cir.1994) (affirming denial of attorney's fee to plaintiff who received only nominal damages, in part because the case "involved no broad civil rights issues").
[34] *Maul v. Constan*, 23 F.3d 143, 146 (4th Cir. 1994).
[35] 236 F.3d 256, 278 (5th Cir. 2000)(*Hopwood III*).

achieved no specific injunctive or monetary relief, the litigation nonetheless resulted in a

significant legal victory invalidating racial preferences in public higher education, which

benefited all future applicants to the school.[36] The second instance occurs when the jury

verdict provides a likely deterrent effect on the defendant's challenged conduct.[37] In

analyzing the "deterrent effect of a jury verdict," the Fifth Circuit observes whether the

state actor changes its behavior due to the jury verdict, and if so, how that benefits the

public.[38]

### A. Compensatory Damages

The Court finds no legitimate argument that compensatory damages were not the

focus of this lawsuit.  Although Plaintiffs also sought declaratory and injunctive relief, the

record reflects that both Plaintiffs sought compensatory damages, including treble

damages, under Louisiana statutory law and 42 U.S.C. 1983.  In their original state court

Petition, Plaintiffs alleged they "sustained significant lost revenue" and sued to recover

those damages, as well as "triple damages and attorney fees" under Louisiana Revised

Statute 51:137.[39]  In the Joint Status Report filed July 27, 2023, Plaintiffs reiterated their

requests for compensatory damages under LRS Section 51, "including treble damages,

damages for restraint of trade, and pursuant to §1983 for violation of their clearly

---

[36] *Id.*

[37] *See Shelton*, 919 F.3d at 331 (citing *Picou v. City of Jackson, Miss.*, 91 F. App'x 340, 342 (5th Cir. 2004) (affirming a fee award after "the district court found that Picou had achieved a compensable goal, she established discrimination based on sex, which should serve as a deterrent to the Jackson Police Department in the future"); *Guerrero v. Torres*, 208 F.3d 1006, 2000 WL 177895, at *2 (5th Cir. 2000) (Table) (holding that attorneys' fees were appropriate because the "verdict sent a message to Torres and to the Texas Prison System that the unjustified use of force, even when a prisoner is not severely injured, is intolerable in a civilized society"); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1052–53 (5th Cir. 1998) (explaining that the plaintiff's "victory produced no 'public benefit' justifying an award of fees," where the violation "found by the jury was peculiar to Hidden Oaks, not general in the sense that the City would be forced to change its dealings with other landowners as a result")).

[38] *Id.* at 330-31.

[39] Civ. Action No. 23cv473-SDD-RLB, Rec. Doc. 1-2, para 18 and 19.

established rights."[40]  And despite having no documented evidence of lost revenue – like tax returns, banks statements, income statements, invoice records, or cash flow statements – Plaintiffs persisted at trial in their efforts to recover compensatory damages, which the Court ultimately denied for lack of evidence.[41]

## B. Compensable Public Goal

Turning to whether Plaintiff achieved a compensable public goal, Plaintiff does not argue that this case established new legal precedent; however, Plaintiff maintains it obtained a jury verdict with deterrent effects on Defendant's conduct. Plaintiff highlights the following portion of the Court's reasoning in denying its request for declaratory and injunctive relief:

> Plaintiff interprets this testimony as evidence that the same flippant treatment will be given to the towing list application process in the future. The Court disagrees. A trial and partially unfavorable verdict could serve as a great motivation to the City to follow the regulations in the application process and to make selection decisions based on non-retaliatory grounds. Should the City continue the past behavior, it is subject again to potential lawsuits and damages.[42]

The Court finds the Fifth Circuit's decision in *Hidden Oaks Ltd. v. City of Austin*[43] instructive.   There, the owner of an apartment complex sued the city for breach of contract, unlawful taking, inverse condemnation, and violation of substantive and procedural due process, arising out of the building inspector's placement of a utility hold on the complex for building code violations.[44]  At trial, the district court instructed the jury to award nominal damages on the procedural due process claim "because Hidden Oaks

---

[40] Rec. Doc. 25, p. 2.
[41] Rec. Doc. 80.
[42] Rec. Doc. 91, p. 11.
[43] 138 F.3d 1036 (5th Cir. 1998).
[44] *Id.*

produced no evidence at trial indicating any damage specifically arising from the procedural due process violation."[45]  The district court further found that "Hidden Oaks's victory produced no 'public benefit' justifying an award of fees in spite of receiving only nominal damages."[46] This is because "the procedural due process violation as found by the jury was peculiar to Hidden Oaks, not general in the sense that the City would be forced to change its dealings with other landowners as a result."[47]  Thus, the Fifth Circuit affirmed the district court's denial of Section 1988 attorney fees, concluding that "the jury's award of nominal damages to Hidden Oaks on its procedural due process claim gave Hidden Oaks little more than 'the moral satisfaction of knowing that a federal court concluded that [its] rights had been violated.'"[48]

Although not binding, the Seventh Circuit considered this issue in *Cartwright v. Stamper*,[49] a case in which the plaintiffs brought a § 1983 action against the superintendent of the Indiana state police and an officer, alleging the defendants violated the plaintiffs' Fourth Amendment rights by an unauthorized entry into their apartment. The plaintiffs' case against the officer went to trial, and the jury found in favor of the plaintiffs but only awarded them one dollar in nominal damages on each of their claims. The district court subsequently awarded attorney's fees in the amount of $52,875. On appeal, the Seventh Circuit reversed the award after analyzing the *Farrar* factors. Regarding the

---

[45] *Id.* at 1052 (*See Farrar*, 506 U.S. at 115, 113 S.Ct. at 574–75 ("In a civil rights suit for damages ... the awarding of nominal damages ... highlights the plaintiff's failure to prove actual, compensable injury."); *cf. Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir.1996) (distinguishing *Farrar* where plaintiff primarily sought and obtained injunctive relief, in addition to winning an award of nominal damages).

[46] *Id.* at 1052 (*See Farrar*, 506 U.S. at 121, 113 S.Ct. at 578 (O'Connor, J., concurring) (noting that an award of merely nominal damages may support an award of fees when the litigation has "accomplished some public goal").

[47] *Id.* at 1053.

[48] *Id.* (quoting *Hewitt v. Helms*, 482 U.S. 755, 762, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987)).

[49] 7 F.3d 106 (7th Cir. 1993).

public purpose served, the Seventh Circuit noted that "[t]he more important the right at stake and the more egregious the violation the more likely it is that the victory serves a public purpose. An award of punitive damages, therefore, is strong evidence that the victory served a public purpose."[50] Because the district court granted a directed verdict in favor of the defendant on the claim for punitive damages, and because the future deterrent effect of the action was limited, the court of appeals held that the factor weighed firmly in favor of finding the victory technical.[51]

The Court also finds the Eleventh Circuit's decision in *Gray ex rel. Alexander v. Bostic* applicable.[52] *Gray* involved a nine-year-old female student who was handcuffed by the school resource officer after he witnessed her make "a disrespectful and physically threatening comment" to her gym teacher.[53]  Gray filed suit asserting a host of claims under 42 U.S.C. 1983 and Alabama state law.[54]  In addition to requesting an unspecified amount in compensatory damages, Gray also sought declaratory and injunctive relief and attorney's fees and costs.[55] At trial, the district court granted the plaintiff's motion for judgment as a matter of law on liability but submitted the issue of damages to the jury.[56] After brief deliberations, the jury awarded the plaintiff $1 in nominal damages.[57]  The district court awarded the plaintiff over $70,000 in attorney's fees, expenses, and costs, which the defendant appealed.[58]  The Eleventh Circuit reversed and remanded the case

---

[50] *Id.* at 110 (quoting *Estate of Borst v. O'Brien*, 979 F.2d 511, 517 (7th Cir. 1992)(punitive damage award reflects "both the value of the victory in finding a violation of constitutional rights and the deterrence value of the suit") (internal quotations omitted).
[51] *Id.*
[52] 720 F.3d 887 (11th Cir. 2013).
[53] *Id.* at 889.
[54] *Id.* at 890.
[55] *Id.*
[56] *Id.* at 891.
[57] *Id.*
[58] *Id.* at 891-92.

back to the district court with instructions to consider "recent guidance."[59]   On remand, the district court awarded a total of $39,900, which the defendant again appealed.[60]

The *Gray* court, relying on the Seventh Circuit's decision in *Cartwright*, applied the same reasoning in finding that the plaintiff "commenced the litigation to redress private injury, and it d[id] not serve a public purpose."[61]   The court found that "Gray failed to establish anything more than that she had been denied a protected right. Despite her numerous claims, Gray was unable to establish that she suffered actual injury."[62]   Further, "Gray specifically sought, but failed to obtain, punitive damages for those claims[,]" and her prayer for injunctive relief failed.[63]

Applying the foregoing reasoning and analysis, the Court finds that this is not a case where the deterrent effect on Defendant's conduct benefits the public at large, as it would in a case involving widespread race discrimination or excessive force where the verdict makes an obvious statement regarding the law. Here, rather, the jury verdict may have a deterrent effect on the Defendant's conduct towards the towing rotation companies in Ascension Parish, but this verdict does not benefit the general public.   Indeed, the verdict in favor of Gonzales Towing but *not* in favor of Southern Towing suggests that the jury did not find that Defendant retaliates in a general fashion; rather it found that Defendant's conduct was specific to Gonzales Towing. The jury's verdict did not send a message regarding First Amendment rights for the general public.   Instead, the verdict in this case achieved for Plaintiff "little more than 'the moral satisfaction of knowing that a

---

[59] *Id.* at 893.
[60] *Id.*
[61] *Id.* at 899.
[62] *Id.*
[63] *Id.*

federal court concluded that [its] rights had been violated.'"[64] Accordingly, the Court finds Plaintiff did not achieve a compensable public goal that created a benefit for the public at large.

### C. Degree of Success Obtained and Proportionality

The Court must also consider the degree of success Plaintiff obtained and a fee award's proportionality to the damages recovered. Although the Fifth Circuit "'ha[s] consistently emphasized that "there is no per se requirement of proportionality in an award of attorney fees[;]"'"[65] the relationship between the damages award and the attorney's fee is a critical *Johnson* factor to be considered in determining whether an adjustment should be made to the overall fee. Notably, in *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, decided in 2022, the Fifth Circuit explained:

> The Supreme Court has twice stated that "degree of success obtained" is "the most critical factor" in determining the reasonableness of attorneys' fees. *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 574, 121 L.Ed.2d 494 (1992) (quoting *Hensley*, 461 U.S. at 436, 103 S. Ct. at 1941). And when the suit is for damages, "a district court, in fixing fees, **is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.**" *Id*. at 114, 113 S. Ct. at 575.[66]

In *Migis v. Pearle Vision, Inc.*, the Fifth Circuit reviewed a district court's award of attorney's fees to a plaintiff in a pregnancy discrimination case.[67] As the Fifth Circuit explained:

> Migis's success relative to the relief she sought was limited. She proceeded to trial on the dual claims that Pearle Vision discriminated against her in terminating her position and in failing to hire her for the opening in the product support group. The district court only found discrimination as to the

---

[64] *Hidden Oaks*, 138 F.3d at 1053 (quoting *Hewitt v. Helms*, 482 U.S. 755, 762, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987)).

[65] *Gurule v. Land Guardian, Incorporated*, 912 F.3d 252, 259 (5th Cir. 2018)(quoting *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 396 (5th Cir. 2016) (quoting *Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991))(and collecting decisions)).

[66] 23 F.4th 408, 418-19 (5th Cir. 2022).

[67] 135 F.3d 1041 (5th Cir. 1998).

termination. Further, her complaint alleged four acts of discrimination against Migis "on account of her sex and/or pregnancy," including her discharge, Pearle Vision's failure to allow her to return to work, discrimination in the terms, conditions, and privileges of her employment, and retaliation. Migis prevailed only on the first theory, and only on the basis of pregnancy discrimination. As indicated in interrogatory answers, she sought recovery of back pay and benefits of $25,000, and punitive and compensatory damages of $300,000. At trial she asked for $50,000 in compensatory damages. The court awarded her only $7,233.32 in back pay, $5000 in compensatory damages, and no punitive damages.[68]

The *Migis* plaintiff requested $110,000 in attorney's fees, and the district court awarded her approximately $81,000 in attorney's fees after applying a 10% reduction for the limited success achieved.   In defending this award, the plaintiff argued that the success achieved was not just about the damages but, "'[s]he received, importantly, a finding and declaration by the court that she had been discriminated against on the basis of pregnancy.'"[69]  The Fifth Circuit was unpersuaded and found the district court's attorney fee award excessive:

> The attorney's fee award was over six and one-half times the amount of damages awarded. Migis sought over twenty-six times the damages actually awarded. Regardless of the effort and ability of her lawyers, we conclude that these ratios are simply too large to allow the fee award to stand. We hold that the district court abused its discretion by failing to give adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the result sought. We therefore reverse the award of attorney's fees and remand the case for a new determination of fees consistent with this opinion.[70]

Here, Plaintiff seeks a fee award over 57 times the amount of nominal damages awarded.  Even at the suggested half - $71,852.50 – that would result in a fee award over 28 times the amount of nominal damages awarded.  Because the Court has determined that *Farrar* controls, and the Court has "considered the amount and nature of damages

---

[68] *Id.* at 1048.
[69] *Id.*
[70] *Id.*

awarded, **the court may lawfully award low fees** ... without reciting the 12 factors bearing on reasonableness ... or multiplying 'the number of hours reasonably expended ... by a reasonable hourly rate[,]'"[71] the Court finds that a flat fee award of $5,000.00 is appropriate in this case based on the limited success achieved in this matter and the amount of damages awarded.

## IV.    COSTS

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."[72] "[T]he word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court."[73] Even when a federal statute does not specifically authorize an award of costs in a particular case, "Rule 54(d)(1) independently authorizes district courts to award costs to prevailing parties" unless a statute or rule precludes it.[74] The Rule "does not require courts to award costs to prevailing [parties]."[75] Rather, it gives the court discretion based on the circumstances of each case.

A federal statute "defines the term 'costs' as used in Rule 54(d)."[76] Under 28 U.S.C. § 1920, a district court may tax the following as costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title; [and]

---

[71] *Id*. (citations omitted)(emphasis added).
[72] Fed. R. Civ. P. 54(d)(1).
[73] *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 376 (2013).
[74] *Id.* at 380, n. 5.
[75] *Id*. at 387, n. 9.
[76] *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987).

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.[77]

"If the party against whom costs are sought does not object, a presumption arises that the costs were necessarily incurred and will be taxed.[78] An objection shifts that burden to require the party seeking costs to show that the costs were necessary."[79] The Court has already determined that Plaintiff is a prevailing party, in limited fashion. Nevertheless, district courts have the discretion to "reduce the size of the prevailing party's award to reflect [a] partial success" by the prevailing party.[80] As discussed above regarding attorney's fees, the Supreme Court has held that "the degree of the plaintiff's overall success goes to the reasonableness of a fee award."[81] "Although costs do not necessarily track fees, with some costs being fixed and independent of the number or success of claims filed, ... the district court has discretion to reduce unreasonable costs."[82]

Plaintiff maintains it is entitled to costs for the following expenses:

- 5/10/23 check 6366 to Clerk of Court – lawsuit filing fees - $730.00;

- 10/14/24 copying expense to Louisiana Secretary of State (certified copies of corporate charters) - $365.00;

- Subpoena fees of $1,044.52 on 10/11/24 the following 10/10/14: check 6989 to Chief Ambeau 92.03, check 6990 to Justin Dupre 108.54, check 6991 to Bobby Webre $109.58, check 6992 to Barney Arceneaux $82.67, check 6993 to Michelle James $107.89, check 6994 to Tyson Dennis $108.15, check 6996 to Frank Credido

---

[77] 28 U.S.C. § 1920.

[78] *Tempest Publishing, Inc. v. Hacienda Records and Recording Studio, Inc.,* 141 F.Supp.3d 712, 717 (S.D. Tex. 2015)(citing *Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.,* 952 F.Supp. 415, 417 (N.D.Tex.1997) ("[I]n the absence of a specific objection, deposition costs will be taxed as having been necessarily obtained for use in the case.").

[79] *Id.* (citing *Jerry v. Fluor Corp.,* No. 10–1505, 2012 WL 4664423, at *2 (S.D.Tex. Oct. 2, 2012) (citing *Fogleman v. ARAMCO,* 920 F.2d 278, 286 (5th Cir.1991)).

[80] 10 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2667 (3d ed.2010).

[81] *Farrar,* 506 U.S. at 114 (quotation marks omitted).

[82] *McCown v. City of Fontana,* 565 F.3d 1097, 1103 n. 2 (9th Cir.2009).

$109.58, check 6998 to Kenny Frederick $128.30, check 6649 to Darryl Tullier $84.30;

- Subpoena fees of $106.07 to the following on 10/23/24: check 7008 to Floyd Russo $106.07;

- Deposition expenses to Veritext Court Reporting: depositions of Lance Bourgeois, Steven Nethken, and Tyson Dennis (2/4/24) in the amount of $1,521.10, to Pilant Court Reporting: depositions of Yancy Ball and Colby Palmer (2/26/24) in the amount of $1,083.30, to Veritext Court Reporting: depositions of Darryl Tullier, Barney Arceneaux, Michelle James, Sherman Jackson (2/7/24) in the amount of $2,048.40.

Plaintiff argues these costs were "necessarily incurred in the prosecution of the plaintiff's claims and use in the case."[83] Plaintiff seeks a total of $6,784.91 in costs. Defendant objects to two items of claimed costs – subpoena service fees and deposition expenses.

### A. Subpoena Service Fees

Defendant contends the Subpoena Service Fees of $1037.11 are "factually baseless."[84] Defendant points out that Plaintiff's exhibits to its motion include subpoenas issued to ten trial witnesses, and many of these exhibits include a "Proof of Service" form, signed by counsel's law clerk Sara Piazza, who acted as process server.[85] On many of these forms, the line item for fees for services is totaled as "$0.00."[86] Other Proof of Service forms are left entirely blank and are without support for any fee charged.[87] Defendant contends Plaintiff cannot claim over a thousand dollars in subpoena services when its sworn admissions to the Court show that the costs for these services was zero.

---

[83] Rec. Doc. 94-2, p. 2.
[84] Rec. Doc. 95, p. 20.
[85] Rec. Docs. 94-7 through 94-16.
[86] *See e.g.*, Rec. Doc. 94-8, Proof of Service for J. Dupre; Doc. 94-12, Proof of Service for T. Dennis; Doc. 94-13, Proof of Service for F. Credido; Doc. 94-15, Proof of Service for D. Tullier; Doc. 94-16, Proof of Service for F. Russo.
[87] *See* Rec. Docs. 94-7, 94-9, 94-10, 94-11, 94-14.

Plaintiff counters that it "is not seeking reimbursement for the costs actually incurred … for serving these witnesses with the subpoenas for trial[.]"[88] Plaintiff is only seeking witness fees recoverable under 28 U.S.C. §1920(2). Plaintiff submitted copies of checks payable to each witness and corroborated by the Affidavits of counsel.[89]  The Court is satisfied that Plaintiff has provided documentation to support the recovery of these costs.[90] Accordingly, the Court finds Plaintiff is entitled to the amount sought - $1,037.11.

## B. Deposition Costs

Defendant also challenges Plaintiff's claim that deposition costs were "necessarily obtained for use in the case."[91] Defendant identifies several depositions taken by witnesses it claims were never called at trial, were called for investigative and discovery purposes only, or were connected only to unsuccessful claims.  However, Defendant far expands the requirements set forth by the Fifth Circuit to recover deposition costs.

The Fifth Circuit set forth the standard for recovery of deposition costs in *Fogleman v. ARAMCO (Arabian American Oil Co.)*:[92]

> [W]e have consistently held that a deposition need not be introduced into evidence at trial in order to be necessarily obtained for use in the case. If, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery, it may be included in the costs of the prevailing party. Similarly, a deposition copy obtained for use during trial or for trial preparation, rather than for the mere convenience of counsel, may be included in taxable costs.[93]

---

[88] Rec. Doc. 98, p. 9.
[89] *See* Rec. Docs. 94-7, 98-1, 94-9, 94-10, 94-11, 94-13, 94-14, 94-16, 94-20, & 94-21.
[90] *See Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64–65 (5th Cir. 1994) (daily transcripts and witness fees, including travel fees, recoverable by prevailing party); *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530, 1552–53 (5th Cir. 1984) (permitting fees for witness who did not testify given another witness' last-minute decision not to testify).
[91] Rec. Doc. 95, p. 21.
[92] 920 F.2d 278 (5th Cir. 1991).
[93] *Id.* at 285 ((internal quotations and citations omitted).

Under *Fogleman*, a prevailing party may recover the cost of a deposition transcript or transcript copy used for trial preparation, even if the party failed to convince the fact-finder of an issue the deposition supports.[94]

The Court is satisfied that the requested deposition costs were not merely incurred for investigative or discovery purposes only; rather, all claims were in play at the summary judgment stage, and it was not unreasonable for Plaintiff to believe it would survive summary judgment on all claims and present such evidence at trial.  The fact that witnesses were later excluded, not called, or not connected to a successful claim, does not preclude Plaintiff's ability to obtain costs as they were taken in preparation for trial. Additionally, Plaintiff showed that the witnesses not called were on Plaintiff's "may call" list.  The Fifth Circuit in *Stubblefield v. Suzuki Motor Corp.*, affirmed a district court's award of costs where the deponents "were witnesses at trial or were on a 'may call' witness list for trial."[95] Accordingly, the Court finds Plaintiff is entitled to $4,625.80 for deposition costs. The remainder of costs requested is referred to the Clerk of Court's Office pursuant to the Local Rules of the Middle District.  Plaintiff shall submit a final Bill of Costs for the Clerk's review.

---

[94] *Id.*

[95] 826 F. App'x 309, 326 (5th Cir. 2020).

## V.     CONCLUSION

For the foregoing reasons, the Motion for Attorney's Fees by Plaintiff Gonzales Towing and Repair, Inc. is GRANTED.[96]

Baton Rouge, Louisiana, this 18th day of March, 2026.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[96] Rec. Doc. 94.